637 A.2d 259

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William C. EDWARDS, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 7, 1993.

Decided Dec. 30, 1993.

Lester G. Nauhaus, Public Defender, Shelley Stark, Chief–Appellate Div., Suzanne M. Swan, Appellate Counsel, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Kemal A. Mericli, Asst. Dist. Atty., Sandra Preuhs, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellant was convicted of third degree murder, following a jury trial, for the death of his wife. The overwhelming

evidence presented by the Commonwealth included the testimony of his daughter, Mary Brown, to the effect that on Thanksgiving Day 1989 her parents had a host of arguments. Finally, Mary Brown and her mother, victim Mary Edwards, left the house with Appellant's words, "I will take care of you when you get home," ringing in their ears. Mary Edwards dropped her daughter off at the latter's home. The next day, Mary Edwards was found dead on her kitchen floor with three bullets in her body. Appellant was found in an alcohol induced sleep reclining in his easy chair. In addition to his dead wife, there were found a .38 snub nose revolver on the table next to him, a near empty bottle of vodka on the dining room table, and a German shepard dog in the yard. Ballistics determined that five shots were fired from the gun. Mary Edwards was hit by three of the cartridges, while the remaining two were on the kitchen floor. No fingerprints were on the gun. Appellant's socks and shoes were bloodied with blood of the decedent's blood type. No evidence of a break-in was observed.

Appellant was charged with murder in the first degree. No defense was presented. The Commonwealth presented its findings to the jury and closed. Defense counsel requested the court *not* to instruct the jury on the principle that "no adverse inference" could be drawn from Appellant's failure to take the stand. The court denied the request and so instructed the jury. Additionally, the instruction included instructions on first, second and third degree murder as well as voluntary manslaughter. The jury found Appellant guilty of third degree murder.

Appellant argues that it was error for the trial court to give the no-adverse-inference charge when the defense expressly requested that it be omitted.[1] The Commonwealth argues that the charge resulted in, at most, harmless error.

1. The challenged jury charge, in pertinent part, stated:

As he sits here with us this morning William Edwards is innocent of the charge of criminal homicide. He remains innocent unless and until you conclude that the Commonwealth has proven his guilt beyond a reasonable doubt.

In *Commonwealth v. Reginald Lewis*, 528 Pa. 440, 598 A.2d 975 (1991), this Court held that it is clearly reversible error to refuse to give the jury a "no adverse inference" charge. The instant appeal presents the other side of the coin, *i.e.*, what happens where the defendant does not want such a charge to be given. This possibility was clearly acknowledged by the majority in *Reginald Lewis* when it was noted that "if defendant and his or her counsel determine that the fundamental right to remain silent is best served by not drawing attention to defendant's silence, the derivative right (i.e., the 'no defense inference' instruction) may be validly waived." *Id.* at 455, fn. 14, 598 A.2d at 983, fn. 13. Thus, since this Court in *dicta* acknowledged that the defendant clearly had the right to refuse this charge, the trial judge's decision nonetheless to instruct the jury was apparently erroneous. The Commonwealth argues that even if the trial court committed error, such error was harmless beyond a reasonable doubt. The Superior Court agreed with the Commonwealth's argument and Appellant comes to us.

In *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), the U.S. Supreme Court held that giving a "no adverse inference" instruction over and against a defendant's objection does not violate a defendant's Fifth Amendment privilege against self-incrimination. The *Lakeside* court, nevertheless, concluded that it "may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection. And each state is, of course, free to forbid its trial judges from doing so as a matter of state law." 435 U.S. at 340, 98 S.Ct. at 1095, 55 L.Ed.2d at 326. A sizable number of states have held as a matter of state law (as we suggested in *dicta* in *Reginald Lewis, supra* ), that giving this instruction over a defendant's objection is *per se* erroneous. See, *Russell v. State,* 398 S.W.2d 213, 240 Ark. 97 (1966); *People v.*

He has no duty to defend himself. He does not have to prove his innocence. The Commonwealth has the burden of proving his guilt. He has elected in this case to present no defense. And he has elected not to testify. That is his right, and you may draw no inference adverse to him from that election; for in a criminal trial under our system of justice the accused does not have to testify in a matter which he is accused.

*Anderson,* 505 N.E.2d 1303, 153 Ill.App.3d 542, 106 Ill.Dec. 512, *app. den.,* 515 N.E.2d 113, 116 Ill.2d 562, 113 Ill.Dec. 304 (1987); *Priest v. State,* 386 N.E.2d 686, 270 Ind. 449 (1979); *State v. Kimball,* 176 N.W.2d 864 (Iowa 1970); *Hardaway v. State,* 562 A.2d 1234, 317 Md. 160 (1989); *Commonwealth v. Buiel,* 463 N.E.2d 1172, 391 Mass. 744 (1984); *People v. Hampton,* 231 N.W.2d 654, 394 Mich. 437 (1975); *State v. Thompson,* 430 N.W.2d 151 (Minn.1988). See also, statutes or court rules to the same effect in three states, to-wit, Conn. Gen.Stat. §§ 54–84(b); Mo. Rule Crim.Proc. 27.05(b); N.Y.Crim.Proc. § 300.10. And see, *People v. Molano,* 253 Cal.App.2d 841, 61 Cal.Rptr. 821 (1967).

The rationale for this rule was best put forth in Green, *The Failure to Testify Instruction,* 14 Willamette L.Rev. 43, 51 (1977):

> The most sensible of the various judicial approaches is to allow the defendant to decide whether the instruction should be given in any particular case. The desirability of the instruction is a matter of trial strategy, and will therefore vary from case to case. The purpose of the instruction is to prevent the jury from considering the defendant's silence as evidence of guilt, and the defendant himself will normally be in the best position to decide whether or not the giving of the instruction will serve this end.

Normally, of course, a defendant's attorney would make this decision and this is how it should be. As the U.S. Supreme Court said in *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966):

> In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate.

384 U.S. at 874–875, 86 S.Ct. at 1851, 16 L.Ed.2d at 986.

As the Supreme Judicial Court of Massachusetts held in *Commonwealth v. Buiel, supra,* we have no hesitancy in announcing for the future that it will be *per se* reversible error if a judge instructs the jury concerning a defendant's right not to testify when the defendant has requested that no such

instruction be given. A *per se* rule will avoid time consuming appeals arguing about harmless error and will clearly instruct trial judges as to how to proceed on this question.

This rule we announce today is a statement of the common law of the Commonwealth for cases tried after this date that the defendant has the choice.

As in *Buiel*, however, we decline to apply this new rule of law to the defendant in this case to grant him a new trial. The charge on the Appellant's failure to testify was a correct statement of the law and we are convinced that giving the charge was harmless error beyond any reasonable doubt. The evidence against Appellant, as outlined above, was overwhelming.

The judgment of sentence is affirmed.

CAPPY, J., files a concurring and dissenting opinion in which FLAHERTY, J., joins.

CAPPY, Justice, concurring and dissenting.

I am saddened by the misguided conclusion reached by the Majority on this day and therefore am constrained to dissent.

Today the Majority chooses to announce a *per se* rule requiring a finding of reversible error in every criminal jury trial where the court charges the jury that no adverse inference may be drawn from the decision of a defendant to remain silent, over the defendant's objection. In one fell swoop, the trial judges of this Commonwealth have been stripped of their obligation to protect the rights of an accused where the circumstances of the trial demand such protection. By this ruling the Majority elevates the thwarting of a decision of trial strategy to the level of a constitutional infraction.

The rationale offered to support this decision by the Majority is that "[a] *per se* rule will avoid time consuming appeals arguing about harmless error and will clearly instruct trial judges as to how to proceed on this question." (Majority opinion at p. 261). I would respectfully remind my colleagues, however, that it is the nature of rules to beget exceptions, and

thus, appeals. For example, in this very case where this rule is being announced, the Majority refuses to apply it because the evidence of the defendant's guilt is so overwhelming that "we are convinced that giving the charge was harmless error beyond any reasonable doubt." (Majority slip opinion at p. 261).

The illogic of this reasoning is simply mindboggling. Also, the very fact that the Majority refuses to apply its newly created rule to the very case within which it was announced, points out the fallacy in the argument that this rule will eliminate time consuming appeals.[1]

Additionally, I do not share the belief of the Majority that our trial judges are incapable of evaluating the circumstances in each specific case, and deciding when the no adverse inference charge needs to be given, including those situations where the defendant objects to the giving of the charge. This Court's decision in *Commonwealth v. Lewis*, 528 Pa. 440, 598 A.2d 975 (1991), adequately set forth for our trial judges the parameters of the no adverse inference charge. In reaching the decision in *Lewis* regarding the absolute right of a defendant to have the jury instructed pursuant to the no adverse inference charge, we made the following observation as to the protection afforded under our state constitution:

This Court has determined on numerous occasions that Article I, Section 9, in providing that a defendant "cannot be compelled to give evidence against himself ...," protects the right of the defendant to stand mute protected by the presumption of innocence, without facing the oppressive

---

1. For instance, what effect will today's ruling have on multiple defendant situations where one defendant wishes to waive the no adverse inference charge, and another defendant maintains his constitutional right to have the charge given? Will this court then be facing time consuming appeals of a right to severance on this basis? Also, in cases where a witness refers inadvertently to the defendant's silence, and the trial court has agreed not to charge on the no adverse inference instruction, will the trial court be required to refrain from giving a cautionary instruction that protects the defendant's right to remain silent? In such circumstances would the trial court be forced to declare a mistrial in order to preserve the defendant's intended trial strategy?

task of having to explain his or her silence. *See Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973); *Commonwealth v. Brenizer,* 467 Pa. 347, 356 A.2d 784 (1976); *see also, Commonwealth v. Miller,* 205 Pa.Super. 297, 208 A.2d 867 (1965).[6]

---

[6] The reason the Pennsylvania Constitution safeguards this right so carefully is that there is a multitude of considerations which may lead a defendant to decline a seat at the witness chair. As Justice Musmanno explained in *Commonwealth v. Dravecz,* 424 Pa. 582, 587, 227 A.2d 904, 907 (1967): "It may be desirable and dramatic for the wrongly accused person to shout: 'I am innocent!' but not everybody responds spontaneously to stimuli. The accusation may be so startling that the accused is benumbed into speechlessness. There are persons so sensitive and hurt so easily, that they swallow their tongue in the face of overwhelming injustice."

*Lewis,* 528 Pa. at 448, 598 A.2d at 979.

Our state constitution zealously safeguards the right to stand mute protected by the presumption of innocence. However, what is at issue in this case, is not that constitutional guarantee, but rather, a decision of trial strategy to forgo that constitutional safeguard. I cannot support the conclusion of the Majority to elevate the frustration of a strategical decision to the level of a constitutional violation.

It must be remembered that the ultimate constitutional right at stake, according to our opinion in *Lewis,* is the right to remain silent. It is one thing to conclude that as a corollary to that right a defendant is entitled to a no adverse inference charge. It is quite another thing to suggest that a defendant who wishes to *waive* that right, for purposes of trial strategy, is somehow clothed with a constitutional guarantee. On this point we concur with the sentiment expressed by Justice Stewart in *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), where he stated: "It would be strange indeed to conclude that this cautionary instruction violates the very constitutional provision it is intended to protect." *Id.,* 435 U.S. at 339, 98 S.Ct. at 1095.

However, even though I do not believe a constitutional violation occurs when the charge is given over a defendant's

objection, I do agree that the better practice is for the trial court to forgo the no adverse inference charge where the defendant specifically chooses to waive the protections embodied therein.

In *Lewis*, this Court, in dicta, acknowledged that in certain cases a defendant may choose to waive his right to have a no adverse inference instruction given:

> We are mindful that, for strategical reasons, a defendant and his or her counsel may determine that defendant's right to remain silent under Article 1, Section 9 is best served by requesting that a "no-adverse-inference" charge *not* be given to the jury, in order to avoid drawing attention to defendant's failure to testify. The "fundamental" right at stake here is the right not to be "compelled to give evidence against [oneself]" from which the "no-adverse-inference" rule derives. Thus, if defendant and his or her counsel determine that the fundamental right to remain silent is best served by not drawing attention to defendant's silence, the derivative right (i.e., the "no-adverse-inference" instruction), may be validly waived. In such cases, an explicit waiver by defendant is required.

528 Pa. at 455 n. 14, 598 A.2d at 983 n. 14.

I would emphasize that in the future, a decision to forgo the no adverse inference charge should be clearly and explicitly acknowledged by the defendant on the record. However, where a voluntary, knowing and intelligent waiver is made by the defendant on the record, the trial court's overriding the decision of the defendant to forgo the charge would be considered to be error, subject to a harmless error analysis.

The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial. *See Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). A harmless error analysis is undertaken by the appellate courts to determine, in those situations where an error has admittedly occurred, whether that error contrib-

uted to the verdict. The proper analysis to be undertaken was thoroughly explained in *Story:*

> This Court has stated that an error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If " 'honest, fair minded jurors might very well have brought in not guilty verdicts,' " an error cannot be harmless on the basis of overwhelming evidence. Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.

> We have cautioned that

> "a conclusion that the properly admitted evidence is 'so overwhelming' and the prejudicial effect of the .... error is 'so insignificant' by comparison, that it is clear beyond a reasonable doubt that the error is harmless, is not to be arrived at lightly."

> Accordingly, we have been reluctant to find an error harmless on the basis of overwhelming evidence.

*Story,* 476 Pa. at 412–413, 383 A.2d at 166 (footnote omitted; citations omitted).

This analysis has been applied by our Court when reviewing the effect of a jury instruction upon the verdict. *See e.g. Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 507 A.2d 1 (1986); *Commonwealth v. Pierce,* 345 Pa.Super. 324, 335, 498 A.2d 423, 429, *aff'd,* 515 Pa. 153, 527 A.2d 973 (1985). In applying the harmless error analysis in a particular case, it is imperative that the burden of establishing that the error is harmless beyond a reasonable doubt rests upon the Commonwealth. *Commonwealth v. Lewis* 528 Pa. 440, 598 A.2d 975

(1991); *Commonwealth v. Bricker*, 525 Pa. 362, 581 A.2d 147 (1990).

In fact, the Majority today applied this very standard to the case *sub judice*, and concluded that the giving of the charge was harmless beyond a reasonable doubt. For the reasons stated above, I concur in the decision to affirm the judgment of sentence; I emphatically dissent from the decision to adopt a *per se* rule of reversible error.[2]

FLAHERTY, J., joins in this concurring and dissenting opinion.

---

2. Several of our sister states have addressed this particular issue. Three distinct approaches have been adopted. The following states hold that it is no error to give the no adverse inference charge over the objection of a defendant: *State v. Wilson*, 57 Ohio App.2d 11, 384 N.E.2d 1300 (1978); *Woodard v. State*, 234 Ga. 901, 218 S.E.2d 629 (1975); *State v. Garcia*, 84 N.M. 519, 505 P.2d 862 (1972); *Champlain v. State*, 53 Wis.2d 751, 193 N.W.2d 868 (1972); *Harvey v. State*, 187 So.2d 59 (Fla.App.1966); and *State v. Goldstein*, 65 Wash.2d 901, 400 P.2d 368 (1965).

A few jurisdictions have found that giving the charge over the defendant's objection is *per se* reversible error: *Priest v. Indiana*, 270 Ind. 449, 386 N.E.2d 686 (1979); *People v. Hampton*, 394 Mich. 437, 231 N.W.2d 654 (1975); and *Tines v. Commonwealth*, 77 S.W. 363 (Ky.1903).

Several jurisdictions have adopted the approach which I recommend herein: that although giving the charge over a defendant's objection is not a constitutional violation, the better approach is to respect the wishes of the defendant; but when the instruction is given under those circumstances a harmless error analysis is undertaken: *Hardaway v. State*, 317 Md. 160, 562 A.2d 1234 (Md.1989); *State v. Thompson*, 430 N.W.2d 151 (Minn.1988); *People v. Anderson*, 153 Ill.App.3d 542, 106 Ill.Dec. 512, 505 N.E.2d 1303 (1 Dist.1987); *Commonwealth v. Buiel*, 391 Mass. 744, 463 N.E.2d 1172 (1984); *State v. Rhoades*, 380 A.2d 1023 (Me.1977); *State v. Kimball*, 176 N.W.2d 864 (Iowa 1970).